Joseph W. Cotchett (36324)
Adam J. Zapala (245748)
Elizabeth Tran (280502)
Joyce Chang (300780)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com
jchang@cpmlegal.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **CAROLINE TONGARM, individually and on behalf of all others similarly situated**<br><br>**Plaintiff,**<br><br>v.<br><br>**VIZIO, INC., a California corporation, and COGNITIVE MEDIA NETWORKS, INC., a Delaware corporation,**<br><br>**Defendants.** | **Case No. CV**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

**CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.  NATURE OF ACTION ..................................................................................... 1

II.  JURISDICTION AND VENUE ....................................................................... 3

III.  INTRADISTRICT ASSIGNMENT .................................................................. 3

IV.  PARTIES ........................................................................................................ 3

V.  FACTUAL ALLEGATIONS ........................................................................... 4

VI.  FACTUAL ALLEGATIONS SPECIFIC TO NAMED PLAINTIFF ................. 12

VII.  CLASS ACTION ALLEGATIONS ................................................................ 13

VIII.  VIOLATIONS ALLEGED .............................................................................. 16

FIRST CLAIM FOR RELIEF
Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710
(On Behalf of Plaintiff and the National Class) ................................................ 16

SECOND CLAIM FOR RELIEF
Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511
(On Behalf of Plaintiff and the National Class) ................................................ 17

THIRD CLAIM FOR RELIEF
Violations of Cal. Civ. Code § 1799.3
(On Behalf of Plaintiff and the National Class) ................................................ 18

FOURTH CLAIM FOR RELIEF
Violations of Cal. Civ. Code § 1750, et seq.
(On Behalf of Plaintiff and the National Class) ................................................ 19

FIFTH CLAIM FOR RELIEF
Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.
(On Behalf of Plaintiff and the National Class) ................................................ 22

SIXTH CLAIM FOR RELIEF
Violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.
(On Behalf of Plaintiff and the National Class) ................................................ 24

SEVENTH CLAIM FOR RELIEF
Unjust Enrichment
(On Behalf of Plaintiff and the National Class, or, in the alternative, the Pennsylvania Class) ........ 25

EIGHTH CLAIM FOR RELIEF
Fraud by Omission
(On Behalf of Plaintiff and the National Class, or, in the alternative, the Pennsylvania Class) ........ 26

NINTH CLAIM FOR RELIEF
Negligent Omission
(On Behalf of Plaintiff and the National Class, or, in the alternative, the Pennsylvania Class)........ 28

IX.      REQUEST FOR RELIEF ..................................................................................... 29

JURY DEMAND ........................................................................................................... 32

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Plaintiff, Caroline Tongarm, by and through her undersigned counsel, individually and on behalf of all others similarly situated, hereby files this Class Action Complaint against Vizio, Inc. ("Vizio") and Cognitive Media Networks, Inc. ("Cognitive") (collectively, "Defendants"), based upon Vizio's installation of tracking software on its internet-connected televisions ("Smart TVs"). In support thereof, Plaintiff states as follows:

## I.   NATURE OF ACTION

1.      Vizio is a consumer electronics company which sells a variety of electronics products, including Smart TVs. The Smart TVs that Vizio manufactures and sells provide consumers with the ability to access the internet using the onboard programs Vizio Internet Apps or Vizio Internet Apps Plus[1] to stream movies and television shows online and to interface with a number of applications.

2.      Defendant Cognitive is an advertising software company, which has partnered with Vizio to secretly monitor millions of consumers as they watch television in their homes. Without disclosing this misconduct to the public, Defendants pre-installed certain "automatic content recognition" ("ACR") software on millions of Smart TVs, waited until consumers put them in their homes and connected them to their home internet networks, and then began collecting the consumers' data on a massive scale.

3.      On or about October 31, 2015, Vizio acquired and implemented a feature into its Smart TVs called "Smart Interactivity," which Vizio claims "collects information from your product which triggers events, such as pop-ups, about what you are viewing."[2] Vizio explains that its Smart TVs "can intelligently recognize linear television and other content shown on the screen and in the future may display accompanying interactive features such as bonus features related to the content you are viewing, the ability to vote in polls, or advertisements that match your

---

[1] "Why Vizio?" http://www.vizio.com/why-vizio (last visited January 11, 2016).

[2] "How to turn on or off Smart Interactivity," http://www.vizio.com/smartinteractivity?country_code=US (last visited January 11, 2016).

interests."[3] This "Smart Interactivity" function is automatically activated by Defendant without the prior knowledge or consent of consumers.

4.     Based upon the findings of an investigation conducted by ProPublic, Vizio's technology is said to be "watching you."[4] Vizio failed to disclose that Smart Interactivity collects the date, time, and channel of programs that are viewed, as well as whether the viewer watched the programs live or recorded.[5] This information is linked to the user's Internet Protocol ("IP") address. In turn, the user's IP address may be used to learn even more about the user, including demographic details such as age, profession, and wealth indicators.

5.     Defendants never obtained consumers' consent before they began collecting this data. Rather, Defendants hid all discussion of their ACR software from consumers, hoping that such consumers would not learn of these aspects of their products and the misconduct. Defendants knew that consumers in the market for Smart TVs generally lack the requisite technical expertise to discover, understand, and disable Defendants' tracking program on their own and, consequently, that such consumers must rely on Defendants to disclose that the Smart TVs contain this intrusive monitoring program in order to make an informed decision to purchase a particular model of SmartTV.

6.     Plaintiff brings this class action against Defendants to enjoin them from tracking and collecting Vizio Smart TV users' personal information without consent. Plaintiff also seeks damages on behalf of herself and other similarly-situated owners for violations of their privacy and consumer rights under federal and state law.

---

[3] *Id.*

[4] "Own a Vizio Smart TV?  It's Watching You," https://www.propublica.org/article/own-a-vizio-smart-tv-its-watching-you (last visited January 11, 2016).

[5] *Id.*

## II.  JURISDICTION AND VENUE

7.  This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, because this action arises under the federal Video Privacy Protection Act, 18 U.S.C. § 2710.

8.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

9.  Further, this Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class is a citizen of a different state than Defendants; there are more than 100 class members; the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs; and none of the exceptions under that subsection applies to this action.

10.  This Court has personal jurisdiction over Defendants because they conduct business in California, are headquartered in California, and because the events giving rise to this lawsuit occurred, in substantial part, in California.

11.  Venue is proper under 28 U.S.C. § 1391, because Defendants conduct substantial business in this jurisdiction, and the events and/or omissions' giving rise to the claims in this action occurred within this judicial district and division.

## III.  INTRADISTRICT ASSIGNMENT

12.  Pursuant to Civil Local Rule 3-2(e), this case is appropriately in the San Francisco Division of the Northern District of California.

## IV.  PARTIES

13.  Plaintiff resides in Allegheny County, Pennsylvania, and is a citizen of Pennsylvania.  Plaintiff purchased a Vizio E-Series 40-inch Smart TV on or around November 28, 2015, and has since connected the Smart TV to the internet and has used the Smart TV to view content.

14.  Defendant Vizio, Inc. ("Vizio") is a California corporation with its principal place of business located at 39 Tesla, Irvine, California 92618, and is therefore a citizen of California.

Vizio does business throughout the United States and the State of California, including in this District.

15.     Defendant Cognitive Media Networks, Inc. ("Cognitive') is a Delaware corporation with its principal place of business located at 1663 Mission Street, San Francisco, California 94103.  Cognitive does business throughout the United States and the State of California, including in this District.

## V.     FACTUAL ALLEGATIONS

16.     Defendant Vizio is a privately-held consumer electronics company, founded in October 2002 in Fountain Valley, California.  Defendant's products are sold in over 8,000 stores nationwide.

17.     For the years 2013, 2014, and through the third quarter of 2015, Vizio's reported net income was $25.7 million, $45.0 million, and $44.3 million, respectively.[6]  Vizio generates billions of dollars in annual revenues, demonstrating that it has slim margins.  Vizio attributes a substantial portion of its net income to sales of its Smart TVs.  To make up for these slim margins, Vizio sought to develop a new source of revenue by monetizing the viewing habits of its millions of customers and settling that information to advertisers without adequately disclosure to its customers.

18.     Visio Smart TVs allow users to stream movies, television shows, and other internet and popular application-based content.  Since 2009, Vizio Smart TV users have been streaming more than 3.5 billion hours of content.[7]  Vizio Smart TVs, with Cognitive's software installed, are able to connect to the user's Wi-Fi internet network through the Vizio Internet App and the Vizio Internet App Plus software services.  Through these services, the user can gain access to internet-based providers, such as Netflix, Amazon Instant Video, YouTube, and Hulu, for example. Consisting mostly of Smart TVs, Vizio boasts that there are over 10 million Vizio internet-

---

[6] Vizio, Inc., Prospectus (Form S-1), available at
https://www.sec.gov/Archives/edgar/data/1648158/000119312515262817/d946612ds1.htm, at 63
(October 22, 2015) ("Prospectus").

[7] *Id.* at 2.

connected devices.[8] By providing these applications and the ability to install other applications, Defendants have created a system whereby they allow for the delivery of video content.

19.    Consumers pay a premium to utilize these features, which are specific to Smart TVs.

20.    In late 2015, Vizio purchased a controlling interest in Cognitive for approximately $50 million.

21.    Vizio pre-installed ACR software on all Vizio Smart TVs, including the "Reference Series," "P-Series," "M-Series," "E-Series," and "D-Series" product lines.

22.    ACR software allows Vizio to track users' activity on the Smart TVs.  ACR searches the Smart TVs for information about a user's home network.  This software collects and instantly transmits network information, including IP addresses, product serial numbers, device nicknames, region and language settings, online services used, and zip codes.

23.    ACR software also records the presence of other devices connected to the home network and obtains information from those devices.  The ACR software then instantly transmits this information to servers ultimately controlled by Vizio.

24.    Vizio's software—which recognizes on-screen content and collects consumer data on its Smart TVs—is called "Smart Interactivity."  Vizio claims that it encrypts, to an extent, the information which is transmitted from Smart TVs to the Vizio servers. Vizio refers to this collection and transmission of private user information as "Inscape data services."   In its Prospectus, Vizio brags about the scope and detail of the data collected and sold and its potential advertising profits as follows:

> Our Inscape data services capture, in real time, up to 100 billion anonymized viewing data points each day from our over 10 million VCUs [(Vizio connected units)].  Inscape collects, aggregates and stores data regarding most content displayed on VCU television screens, including content from cable and satellite providers, streaming devices and gaming consoles.  Inscape provides highly specific viewing behavior data on a massive scale with great accuracy, which can be used to generate intelligent insights for advertisers and media content providers and to drive their delivery of more

---

[8] *Id.*

relevant, personalized content through our VCUs.  Although we are still in the early stages of commercializing Inscape and have yet to generate meaningful revenue from it, we believe it provides an attractive value proposition to advertisers and media content providers which will enable us to further monetize it in the future.[9]

25.     Vizio's Prospectus contains the following illustrations, further confirming that the "accurate, real-time viewing behavior data" collected from consumers through Inscape Data Services is intended to be disseminated to "Advertising/Content Partners":



*See* Prospectus at 2.

_____

[9] *Id.*



*See* Prospectus at 101.

26.     Vizio refers to the information it surreptitiously collects as "Non-Personal Information," which Vizio describes as "data in a form that does not, on its own, permit direct association with any specific individual."[10]   This includes, but is not limited to, the IP addresses products that are assigned to users' internet-connected devices, their zip codes, the online services they visit, information about their Vizio products (such as MAC addresses, product model numbers, hardware and software versions, chipset IDs, and region and language settings), as well as information about the products users request or purchase, the presence of other devices connected to their local networks, and the number of users and frequency of use of Vizio products and services.[11]   Vizio also collects "anonymous information regarding customer activities on our websites, on Internet-connected products and services, and on Vizio's Internet store.[12]

---

[10] http://www.vizio.com/privacy (*See* text under heading: "What information we collect") (accessed Feb. 2, 2016).

[11] *Id.*

[12] *Id.*

27.     Although Vizio claims that the information collected is non-personal, technical experts have challenged this characterization.  For example, Extreme Tech's website contains the following excerpt from an article authored by Joel Hruska on November 10, 2015.

> "Non-personally identifiable information" is a contradiction in terms, particularly when the companies in question have access to mobile data.  The entire point of Vizio's advertising push is to sell this information to companies so they can track you on multiple devices.  In order to do that, they're going to need to find those devices.  If an advertiser can pick up on the fact that you watch, say, Arrow in order to send you ads enticing you to watch The Flash, then that advertiser effectively knows who you are.[13]

28.     In addition to technical experts, the National Institute of Standard and Technology specifically characterizes IP addresses as constituting personally identifiable information.[14]

29.     After secretly collecting data from its customers, Vizio sells the consumer's IP address, and all information obtained therefrom, to third party advertisers and data aggregators, who may then target individual consumers not only through their Smart TVs, but also through any other devices that were connected to the user's Wi-Fi network.  With the consumers' personal information, the third parties either make tailored advertisements to the users, or sell aggregated data to other companies.

30.     Vizio did not disclose the existence of this tracking software to consumers on the product's packaging, during the setup of the Smart TV, or in the product's advertising; yet, this software is enabled by default.  Similarly, Vizio Smart TVs do not alert consumers while or before beginning to watch a program or internet content that their Smart TVs are actively tracking them and that the information collected will be disseminated for profit.

---

[13] Joel Hruska, "Vizio TVs Caught Tracking Viewing Habits, Selling Data to Advertisers." ExtremeTech (Nov. 10, 2015) (available at http://www.extremetech.com/internet/217762 viziotvs-caught-tracking-viewing-habits-selling-data-to-advertisers) (emphasis in original).

[14] National Institute of Standards and Technology, U.S. Dept. of Commerce, "Guide to Protecting the Confidentiality of Personally Identifiable Information" (April 2010), (available at http://csrc.nist.gov/publications/nistpubs/800-122/sp800-122.pdf).

31.     Vizio merely provides consumers with information on its website on how to turn off the tracking; however, consumers must actively seek out this information, assuming they somehow discover the software's existence.[15]

32.     Defendants do not disclose that the Smart TVs are pre-installed with ACR during setup, in advertising, or anywhere else.  Defendants also do not disclose to consumers that they are being monitored or ask consumers to agree to any terms or privacy policy relevant to the ACR.

33.     Rather, Defendants buried any mention of ACR to deceptively named and obscure television settings and menus.  Defendants did this because they knew that no consumer would uncover the purported disclosures without aid.  For example, Defendants hid their privacy policy that purportedly governs how the Smart TVs collect data and how Defendants use the data in a location that requires the consumer to first load the settings menu, navigate to "System," then to "Reset & Admin" (which Defendants describe as the location to "Reset the TV to factory defaults. Administrative tasks are available here."), and then Vizio's Privacy Policy.

34.     Nevertheless, the buried privacy policy is further concealed by Defendants' choice to make their consumers attempt to read the policy in small-sized font, low contrast (white text against a light blue background), on only a small fraction of the total screen, requiring consumers to stand inches away from their TVs to view complex and dense boilerplate text.  It can be inferred, then, that although Defendants market their Smart TVs as being high-definition and having great fidelity, they purposefully made the privacy unreadable.

35.     In an October 2015 filing with the Securities and Exchange Commission regarding its initial public offering, Vizio revealed its concern that its customers might react negatively to the surreptitious collection of their data: "Our customers may also object to or opt out of the collection and use of their data, which may harm our business."[16]

---

[15] "How to turn on or off Smart Interactivity,"
http://www.vizio.com/smartinteractivity?country_code=US (last visited January 11, 2016).

[16] Prospectus, at 37.

36.     Although intending to profit from selling personal information to third parties without consent, Vizio itself recognized potential privacy law concerns.  Vizio stated the following:

> We collect, process, store, use and to some extent disclose information collected from or about purchasers and users of our products, and from the devices themselves.  **The collection and use of personal information**, and analysis and sharing of anonymous user data and unique identifiers to inform advertising or analyze viewing behaviors subject us to legislative and regulatory burdens, may expose us to liability, and our actual or perceived failure to adequately protect consumer data could harm our brand, our reputation in the marketplace and our business.
>
> Privacy laws and regulations, if drafted or interpreted broadly, could be deemed to apply to the technologies we use to collect, analyze and share viewing behaviors or other data collected from our Smart TVs or consumers, and could restrict our information collection methods or decrease the amount and utility of the information that we would be permitted to collect and share. . . .  In addition, a determination by a court or government agency that any of our practices, or those of our agents, do not meet these standards could result in liability, or result in negative publicity, and adversely affect our business.[17]

37.     Vizio again admits that its activities may violate various privacy laws and regulations as it stated, "[W]e cannot assure you that our privacy policies and other statements regarding our practices will be sufficient to protect us from liability or adverse publicity relating to the privacy and security of information about consumers or their devices."[18]  Vizio further has admitted that it may be liable and be the subject of litigation over these practices.

38.     Vizio attempts to share the potential liability with the third parties who analyze, view, or share the data obtained by Smart Interactivity by stating that it requires these third parties to "employ reasonable security measures" and that Vizio "imposes strict conditions of confidentiality and use on such third parties" regarding consumers' IP addresses.[19]  Even still,

---

[17] *Id.* at 37-38.

[18] *Id.* at 39.

[19] *Id.*

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Vizio admits that such policies "may also put consumers' information at risk and could in turn have an adverse effect on [its] business."[20]

39.    In addition to violating consumers' privacy, Vizio Smart TVs have actually placed its users' Wi-Fi network at risk of cyberattack.  An investigation by Avast has confirmed that Defendants' tracking software is easily manipulated to unencrypt the data that it has collected. Avast also found that there are minimal barriers between the Smart TV and other devices on the local Wi-Fi network.  This lack of safeguards could enable a hacker to use the Smart TV "as a launching pad for malware or other types of malicious scenarios."[21]

40.    Despite Vizio's expressed concerns over its policies' legality, it has continued to collect and disseminate consumers' personal information without the consumers' consent in violation of statutes and consumers' privacy rights.

41.    Defendants' improper data collection policies contrast with those of its competitors, like Samsung and LG Electronics, who only track users' viewing habits if their customers affirmatively choose to turn the feature on.   In contrast, Vizio collects its customers' data automatically, requiring consumers to turn the feature off.[22]

42.    Defendants knew that consumers would connect their Smart TV to their private home networks, which are typically protected by a confidential security key or password.  Once inside the private home network, Defendants exploited that access to scan for all devices connected to each consumer's home network.  Through the scan, Defendants' Smart TVs obtain information about these devices, including product names, model numbers, and sensitive data like product serial numbers and device identifiers.

43.    Defendants' Smart TVs can also obtain the personalized names of computers, devices' unique addresses, and details about consumers' wireless internet networks.   This

---

[20] *Id.*

[21] "Vizio Smart TV Hacked to Give Attackers Access to Home WiFi Network: Avast confirms the recent Vizio Smart TV snooping scandal" http://news.softpedia.com/news/vizio-smart-tv-hacked-to-give-attackers-access-to-home-wifi-network-496085.shtml (last visited January 13, 2016).

[22] https://www.propublica.org/article/own-a-vizio-smart-tv-its-watching-you.

**CLASS ACTION COMPLAINT; JURY DEMAND**

information is usually protected behind consumers' internet firewalls and home network privacy settings, and only trusted devices have access to consumers' private networks.

44.     As alleged above, Vizio admits that it discloses information collected by its Smart TVs to various third parties.  Defendants target advertisements on Smart TVs by compiling information collected through the Smart TVs and contracting with data brokers to "enhance" the information.   By contracting with data brokers, Defendants obtain information about the individuals watching particular programs and media, including their names, addresses, other demographic information, and likely more.  Vizio provides as much identifying information about its consumers to the data brokers, who then match and link that information to their database of consumers.  The broker then appends any information that it has to the original received data, sending the "enhanced" data back to Vizio.  Defendants then disclose, for profit, certain of that "enhanced" information to media and data analytics companies, amongst others.

45.     As a result of the above, Vizio has and continues to invade the protected privacy rights of millions of consumers by unlawfully collecting, selling, and sharing their personal information and viewing histories without prior consent or express disclosure.

## VI.    FACTUAL ALLEGATIONS SPECIFIC TO NAMED PLAINTIFF

46.     On or about November 28, 2015, Plaintiff purchased a 40" Vizio Smart TV, model number VIZIO E40-C2 (Plaintiff's "Smart TV") from a Target store located in Pittsburgh, Pennsylvania.

47.     Plaintiff's Smart TV was enabled with Smart Interactivity and is connected to the internet via the same Wi-Fi network as many other devices in her home that are used and operated by herself and her family members.  Since purchasing the Smart TV, Plaintiff and her family have watched, *inter alia*, movies and shows via applications through Vizio's preloaded Internet App Plus and via other inputs.

48.     Plaintiff did not consent at the time of purchase or set up, or any other time to the operation of Vizio's tracking software on her Smart TV.   Additionally, Vizio did not notify

Plaintiff of the pre-installed tracking software, either in printed materials contained in the Smart TV packaging or in the prompts guiding Plaintiff through the setup of the Smart TV.

49.    Accordingly, Plaintiff has suffered damages in the amount of the purchase price of the Smart TV and as a result of Vizio's unlawful monitoring of her behavior.

## VII.    CLASS ACTION ALLEGATIONS

50.    Plaintiff brings this action on behalf of herself and all members of the following Classes (collectively, the "Class") pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3):

National Class:

> All individuals in the United States who purchased a Vizio Smart TV with Smart Interactivity capability and Automatic Content Recognition software pre-installed.

Pennsylvania Class:

> All individuals in the Commonwealth of Pennsylvania who purchased a Vizio Smart TV with Smart Interactivity capability and Automatic Content Recognition software pre-installed.

51.    Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants; officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class are any judge, justice, or judicial officer presiding over this matter, and the members of their immediate families and judicial staff.

52.    Plaintiff reserves the right to amend or modify the above class definitions to adjudicate common issues and claims of the Class members if discovery and further investigation reveal that the Class should be expanded, divided into additional subclasses or modified in any other way.

53.    <u>Numerosity</u>: The exact number of members of the Class is unknown as such information is unavailable to Plaintiff at this time.  However, Plaintiff believes that individual joinder in this case would be impracticable.  The Class likely consists of hundreds of thousands of individuals.  These individuals can be readily ascertainable through Defendants or their agents' records and are obtainable to Plaintiff only through the discovery process.

54.     Plaintiff believes that there are hundreds of thousands of members of the Class and are so numerous that joinder is impractical.

55.     <u>Predominance of Common Questions of Fact and Law:</u> Questions of law and fact common to all Class members exist and predominate over any questions affecting only individual Class members, including, but not limited to, the following:

a.     Whether Defendants unlawfully collected and disseminated Plaintiff's and Class members' personal information;

b.     Whether Defendants disclosed to Plaintiff and Class members before the tracking software was activated on their Vizio Smart TVs that their personal information would be collected and disseminated to third parties;

c.     Whether Defendants misrepresented or omitted material facts with regard to the Smart Interactivity feature of the Smart TVs;

d.     Whether Plaintiff and Class members consented to the collection of their personal information and its sale to third parties;

e.     Whether Plaintiff and Class members have a reasonable expectation of privacy in the information collected and disseminated by Defendants;

f.     Whether Defendants' conduct constitutes violations of the laws and statutes asserted herein;

g.     Whether Defendants' conduct was willful, intentional, or knowing;

h.     Whether, as a result of Defendants' conduct, Plaintiff and Class members sustained monetary loss, and, if so, the proper measure of that loss;

i.     Whether, as a result of Defendants' conduct, Plaintiff and Class members are entitled to damages, including compensatory, statutory, or punitive, and the amount of such damages;

j.     Whether, as a result of Defendants' conduct, Plaintiff and Class members are entitled to equitable relief, such as declaratory or injunctive relief;

k.     Whether Defendants were unjustly enriched by their conduct; and

l.      Whether, as a result of Defendants' conduct, Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, prejudgment interest, or costs of suit.

56.      <u>Typicality</u>:  Plaintiff's claims, and Defendants' defenses, are typical of the claims and defenses of and to the Class.   Every member of the Class was similarly affected by Defendants' course of conduct and experienced the same harm, damages and loss based on Defendants' unlawful conduct.  As such, Plaintiff and Class members must establish the same facts in order to prove the claims asserted herein.

57.      <u>Adequacy of Representation</u>:  Plaintiff does not have any conflicts with any other members of the Class, and will fairly and adequately represent and protect the interests of the members of the Class and any other subclass.   Plaintiff has retained counsel competent and experienced in consumer protection and class action litigation, trials, and appeals.

58.      <u>Superiority of a Class Action</u>:  A class action is superior to other available methods for fair and efficient adjudication of this controversy.   The expense and burden of the individual litigation would make it impracticable or impossible for the Class members to prosecute their claims individually.   Absent a class action, Defendants likely will retain the benefits of its wrongdoing.  Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for these wrongs.  Absent a representative action, the Class members will continue to suffer losses and Defendants will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.   The trial and litigation of Plaintiff and Class members' claims are manageable.  Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and the court system.   The class action device presents far fewer management difficulties and provides the benefits of a single, uniform court judgment.   Thus, the benefits of proceeding as a class action outweigh the difficulties.

## VIII.   <u>VIOLATIONS ALLEGED</u>

**FIRST CLAIM FOR RELIEF**
**Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710**
**(On Behalf of Plaintiff and the National Class)**

59.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

60.     Defendants are "video tape service providers" within the purview of the Video Privacy Protection Act (hereinafter "VPPA").   A video tape service provider "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  Defendants deliver videos and "similar audio visual materials" to consumers through their internet-connected Smart TVs, as well as through many of the pre-loaded applications available on such Smart TVs.

61.     Plaintiff and Class members are considered to be "consumers" under the VPPA, which defines a consumer as a "renter, purchaser or subscriber of goods or services from a video tape service provider[.]"  18 U.S.C. § 2710(a)(1).  Plaintiff and Class members purchased Smart TVs manufactured, marketed and distributed by Defendants.

62.     The information that is collected by Defendants via the tracking software constitutes "personally identifiable information" within the purview of the VPPA because the information "identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

63.     Plaintiff and Class members watched movies and television shows on the Vizio Smart TVs.   Upon information and belief, at all times Defendants tracked Plaintiff and Class members' usage of the Smart TVs and collected information on Plaintiff and Class members' viewing habits, performed scans of Plaintiff and Class members' home Wi-Fi networks, and transmitted this information to Defendants' central databases.

64.     Without Plaintiff or Class members' knowledge or consent, Defendants disclosed and continue to disclose Plaintiff and the Class members' information, including personally identifying information, to unidentified, unauthorized third parties, including advertisers.

65.    Defendants have not attempted to solicit consent from Plaintiff or Class members to collect and disseminate their "personally identifiable information."

66.    Defendants did not provide Plaintiff with an opportunity, in a clear and conspicuous manner, to prohibit disclosure of her personally identifiable information.

67.    Defendants' transmissions of Plaintiff and Class members' personally identifiable information to these third parties constitutes "knowing[] disclosures" of Plaintiff and Class members' "personally identifiable information" to a person under the VPPA. 18 U.S.C. § 2710(a)(1).[23]

68.    Defendants' unlawful disclosures constitute a direct violation of the VPPA.  Thus, Plaintiff and Class members' statutory rights under the VPPA have been violated, and they are, therefore, entitled to all damages, fees, costs, and equitable relief as provided by the VPPA, 18 U.S.C. § 2710(c).  Plaintiff and Class members also specifically seek an injunction prohibiting Defendants from collecting and disseminating personally identifiable information in the future.

**SECOND CLAIM FOR RELIEF**
**Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511**
**(On Behalf of Plaintiff and the National Class)**

69.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

70.    Defendants, either directly or by aiding, abetting or conspiring to do so, intentionally intercepted or endeavored to intercept and/or procured others to intercept Plaintiff and Class members' electronic communications without Plaintiff's or Class members' knowledge, authorization, or consent in violation of 18 U.S.C. § 2511.

71.    An "electronic communication" is defined in § 2510(12) as any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part

---

[23] Such data collection and disclosures are permitted under the VPPA "only in connection with debt collection activities, order fulfillment, request processing and the transfer of ownership."  18 U.S.C. § 2710(a)(2).

**CLASS ACTION COMPLAINT; JURY DEMAND**

by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce.  This definition includes television programming.

72.     Defendants, either directly, indirectly, or by conspiring to do so, intentionally used or procured to be used a device to intercept the above-referenced electronic communications of Plaintiff and Class members via software installed on their Smart TVs as alleged above.

73.     Through the installing and enabling of ACR tracking software on Vizio Smart TVs, the collection of communications, and the provision of services to permit the illegal interception and transmission of electronic communications as alleged herein, Defendants engaged in a course of conduct with the intention of intercepting communications of Plaintiff and Class members.

74.     Defendants violated 18 U.S.C. § 2511(1)(d) by intentionally using or endeavoring to use, the contents of Plaintiff and Class members' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiff and Class members' electronic communications.   Neither Plaintiff nor Class members authorized or consented to Defendant's interception of their electronic communications.

75.     As a result, Plaintiff and Class members have suffered harm through the interception, retention, and dissemination of their personal communications and information.

76.     Plaintiff and Class members are authorized to bring a private cause of action pursuant to 18 U.S.C. § 2520.

77.     Plaintiff and Class members seek declaratory and equitable relief, disgorgement of profits, and statutory damages of the greater of $10,000.00 or $100.00 per day for each day of violation, actual and punitive damages, and reasonable attorney's fees and costs.

**THIRD CLAIM FOR RELIEF**
**Violations of Cal. Civ. Code § 1799.3**
**(On Behalf of Plaintiff and the National Class)**

78.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

79.     California Civil Code § 1799.3(a) provides, "No person providing video recording sales or rental services shall disclose any personal information or the contents of any record,

including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

80.     Defendants are each a "person providing video recording sales or rental services" because it facilitates the sale and rental of videos to consumers through its internet connected Smart TVs.

81.     None of the exemptions provided by Cal. Civ. Code § 1799.3 (b) applies.

82.     Defendants have disclosed and continue to disclose Plaintiff's personal information and the contents of records prepared or maintained by Defendants to third parties.  Defendants first disclose collected personal information and contents of records to third-party data brokers to "enhance" information collected through the Tracking Software with other demographic information about Plaintiff.  Defendants then disclose the "enhanced" personal information and contents of records to advertisers.

83.     At all times Defendants have acted willfully.

84.     At no time did Plaintiff provide Defendants with any form of consent allowing it to collect her personal information and viewing records, nor to disclose her personal information and viewing records to third parties.

85.     As a result of Defendants' unlawful disclosures, Plaintiff and the Class have had their statutorily defined right to privacy violated.  Plaintiff seeks an injunction prohibiting Defendants from collecting and then disclosing her and the Class's personal information in the future, as well as the maximum statutory and punitive damages available under Cal. Civ. Code § 1799.3(c)(1).

**FOURTH CLAIM FOR RELIEF**
**Violations of Cal. Civ. Code § 1750, et seq.**
**(On Behalf of Plaintiff and the National Class)**

86.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

87.   The Consumers Legal Remedies Act ("CLRA") applies to Defendants' actions and conduct as described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

88.   Defendants are each a "person" as defined by Cal. Civ. Code § 1761(c).

89.   Plaintiff and each member of the Class are "consumers" as defined by Cal. Civ. Code § 1761(a).

90.   Defendants' Smart TVs are "goods" within the meaning of Cal. Civ. Code § 1761(a).

91.   As described herein, Defendants have engaged in deceptive practices, unlawful methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750 et seq., to the detriment of Plaintiff and the Class.

92.   Defendants, acting with knowledge, intentionally and unlawfully brought harm upon Plaintiff and the Class by installing Tracking Software on Vizio Smart TVs and collecting, without authorization, consumers' viewing habits.

93.   Specifically, by not disclosing that the Tracking Software was installed on the Smart TVs, Defendants violated Cal. Civ. Code § 1750 in at least the following respects:

    a.   In violation of § 1770(5), by representing that the Smart TVs had characteristics, ingredients, uses, benefits, or quantities which they did not have;

    b.   In violation of § 1770(7), by representing that the Smart TVs were of a particular standard, quality, or grade of which they are not; and

    c.   In violation of § 1770(9), by advertising the Smart TVs with the intent not to sell its goods as advertised.

94.   Defendants' unfair or deceptive acts or practices were capable of deceiving a substantial portion of the purchasing public.

95.   Defendants did not disclose facts about the Tracking Software to consumers that purchased the Smart TVs because it knew consumers would not purchase the Smart TVs if they knew of the Tracking Software.

96.     Defendants were under a duty to Plaintiff and the Class to disclose that the Smart TVs contained the Tracking Software because:

      a.  Defendants were in a superior position to know that the Tracking Software was installed on the Smart TVs;

      b.  Plaintiff and the Class could not reasonably have been expected to learn or discover that Defendant included the Tracking Software on the Smart TVs;

      c.  Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover that Defendants included the Tracking Software on the Smart TVs; and

      d.  Defendants knew that Plaintiff and Class members would not purchase the Smart TVs if they knew of the Tracking Software.

97.     By failing to disclose that the Smart TVs contained the Tracking Software, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

98.     The facts concealed or not disclosed by Defendants to Plaintiff and the Class, including that the Smart TVs contained the Tracking Software, are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Smart TVs.

99.     Plaintiff and the Class reasonably expected that their televisions would be free from Tracking Software.

100.    The existence of Tracking Software on a television is a material term for the purchase of a television, and a primary reason to not purchase a particular television.

101.    Defendants did not disclose facts about the Tracking Software to consumers that purchased the Smart TVs because it knew consumers, acting reasonably under the circumstances, would not purchase the Smart TVs if they knew of the Tracking Software.

102.   Through the omissions detailed herein, Defendants wrongfully induced Plaintiff and the other members of the Class to purchase the Smart TVs when they otherwise would not have purchased them.

103.   As a direct and proximate result of Defendants' violations of Cal. Civ. Code §§ 1750, et seq., Plaintiff and each Class member have suffered harm in the form of paying moneys to purchase the Smart TVs when they otherwise would not have purchased them.

104.   Under Cal. Civ. Code § 1780(a) and (b), Plaintiff, individually and on behalf of the Class, seeks an injunction requiring Defendants to cease and desist the illegal conduct alleged in this Complaint, and all other appropriate remedies for its violations of the CLRA.  For the sake of clarity, Plaintiff explicitly disclaims any claim for damages under the CLRA at this time.

**FIFTH CLAIM FOR RELIEF**
**Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.**
**(On Behalf of Plaintiff and the National Class)**

105.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

106.   California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200, et seq., protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

107.   The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact.  A business practice need only meet one of the three criteria to be considered unfair competition.

108.   The specifications of a consumer product constitute a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product.  Any deception or fraud related to the specifications of a product is materially misleading.

109.    As described herein, Defendants engaged in deceptive business practices, as defined by the UCL, by installing the Tracking Software on Vizio Smart TVs and collecting, without authorization, consumers' viewing habits.

110.    Defendants violated the fraudulent and unfair prongs of the UCL by knowingly installing Tracking Software that collects information on the specific movies or shows being watched and that performs a network scan of home computer networks to capture, amongst other things, the MAC identifiers and names of wireless routers, mobile devices (e.g., smartphones), and computers and then sends the collected information to Defendants.

111.    Defendants did not disclose that the Smart TVs contain the Tracking Software because they knew consumers would not purchase the Smart TVs if they disclosed these facts.

112.    Furthermore, Defendants never sought or obtained consumers' consent to install or operate the Tracking Software on consumers' Smart TVs.

113.    As such, Defendants caused substantial injury to consumers through the fraudulent and unfair conduct described above.  The injuries caused by Defendants' fraudulent conduct are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided.  Defendants knew or had reason to know that Plaintiff and the Class could not have reasonably known or discovered the existence of the Tracking Software.

114.    Defendants' fraudulent and unfair conduct occurred during the marketing, distribution, and sale of Smart TVs, and therefore occurred in the course of Defendants' business practices.

115.    Defendants' conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for the Smart TVs.

116.    If Defendants had disclosed that their Tracking Software was installed and operating on the Vizio Smart TVs, Plaintiff and members of the Class would not have purchased the Smart TVs.

117.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1) requiring Defendant to cease the fraudulent and unfair practices described herein; (2) requiring Defendants to restore to Plaintiff and each Class member any money acquired by means of unfair competition (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

### SIXTH CLAIM FOR RELIEF
**Violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.**
**(On Behalf of Plaintiff and the National Class)**

118.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

119.    California's False and Misleading Advertising Law ("FAL") prohibits corporations from intentionally disseminating advertisements for products or services that are "unfair, deceptive, untrue, or misleading." Cal. Bus. & Prof. Code §17500.

120.    As detailed throughout this Complaint, Defendants disseminated unfair, deceptive, untrue, and misleading advertisements because it does not disclose that the Smart TVs contain the Tracking Software. Defendants did not disclose that fact because it knew consumers would not purchase its Smart TVs if they knew it contained the Tracking Software.

121.    A reasonable person is likely to be deceived by Defendants' omissions.

122.    Defendants knew or should have known when creating and disseminating advertisements without disclosing that the Smart TVs contain the Tracking Software that they contained materially false and misleading information.

123.    Defendants' conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for the Smart TVs.

124.    Plaintiff seeks an order (1) requiring Defendants to cease the false advertising practices described herein; (2) requiring Defendants to restore to Class members any money acquired by means of false advertising (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

### SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment
**(On Behalf of Plaintiff and the National Class, or, in the alternative, the Pennsylvania Class)**

125.  Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

126.  Plaintiff and Class members conferred a benefit upon Defendants in the form of the purchase price of the Smart TVs and in the value of the personal viewing history and other information collected by Defendants.

127.  The benefit is easily measurable as the Nielsen Company, a market leader in the measuring of program viewership and demographics, pays consumers approximately $10.00 for one-time access to their video viewing records.[24]

128.  Defendants have appreciated the benefits conferred and have capitalized on this by selling the consumers' information to third parties for Defendants' monetary gain.

129.  The benefit is measurable because Defendants systematically, through carefully designed computer programs and calculations, commoditized and packaged Plaintiff and Class members' private information and sold it to third parties.

130.  Defendants' acceptance and retention of the benefits would be unjust because this information collected by Defendants contains personally identifiable information, which Plaintiff and Class members did not and would not authorize Defendants to gather and disseminate without being appropriately compensated, or without, at a minimum, having providing their informed, prior consent to Defendants.

---

[24] Nielsen TV Diary | Frequently Asked Questions, tvdiary.nielsen.com/content/panel/tvdiary7 -en-feb2014/faq.html (last visited January 12, 2016) ("The people who plan and schedule television programs want to know what households like yours are watching. Unlike a newspaper or magazine, where the copies sold can be counted, there is no simple way to know how many people are watching a certain television program. Nielsen estimates the audience of TV programs with the information gathered from households like yours," and that "[t]he money enclosed with the diary is a thank you in advance for filling out and returning your diary. We truly appreciate your participation.").

131.   Defendants' retention of the monetary gains would violate the fundamental principles of justice and equity.

132.   As a direct and proximate result of Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and Class members, Defendants have been unjustly enriched.

133.   Accordingly, Plaintiff and Class members seek disgorgement and restitution of any money Defendants have received as a result of the conduct alleged herein.

**EIGHTH CLAIM FOR RELIEF**
**Fraud by Omission**
**(On Behalf of Plaintiff and the National Class, or, in the alternative, the Pennsylvania Class)**

134.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

135.   Defendants concealed, suppressed, or omitted a material fact concerning Vizio Smart TVs, to wit, the existence of the Smart Interactivity software that tracks and collects the users' information and viewing history as well as information from other devices that are connected to the user's Wi-Fi network.

136.   Defendants were under a duty to Plaintiff and Class members to disclose that the Smart TVs contained the pre-enabled tracking software due to the following:

    a.   Defendant Vizio, as the manufacturer, was in a superior position to know of the existence of the pre-enabled tracking software on Vizio Smart TVs;

    b.   Both the Video Protection Privacy Act and the Electronic Communications Privacy Act prohibit the collection, interception, disclosure, and/or transmission of the information at issue without the prior, informed consent of Plaintiff and the Class members or the opportunity, given in a clear and conspicuous manner, to prohibit the disclosure;[25]

    c.   Plaintiff and Class members could not reasonably have been expected to learn or discover that Vizio included pre-enabled tracking software on its TVs;

---

[25] *See* 18 U.S.C. § 2511.

**CLASS ACTION COMPLAINT; JURY DEMAND**

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

d.  Vizio should have known that Plaintiff and Class members could not reasonably have been expected to learn or discover that Vizio included pre-enabled tracking software on its TVs, and in fact, Vizio took steps to actively conceal the tracking software; and

e.  Vizio should have known that the existence and nature of the pre-enabled software was a material fact that influenced the purchasing decision of Plaintiff and Class members.

137.   Defendants intentionally concealed, suppressed, or omitted the material facts described above with the intent to defraud Plaintiff and Class members because Defendants knew or should have known that Plaintiff and Class members would not have purchased the Smart TVs if the existence of the software were disclosed.

138.   A significant part of Defendants' marketing of Vizio Smart TVs was informing consumers that the TVs could be connected to the internet through a home network.  Defendants deliberately, however, chose to omit the fact that connecting to the internet in this way would allow Defendants to track, record, and disseminate for profit the personal viewing histories and personally identifiable information without the consumers' affirmative consent.

139.   Defendants recognize the materiality of the tracking software in Defendants' Prospectus, as set forth above, by admitting that if the public knew the truth, it could significantly impact sales of its Smart TVs and its ability to profit from the sale of users' personally identifiable information to third parties.

140.   Plaintiff and Class members were unaware of the existence of the tracking software on Vizio's Smart TVs at the time of the purchases.  Had they known, Plaintiff and Class members would not have purchased Vizio Smart TVs, or would have paid less for them.

141.   Defendants' conduct directly and proximately caused Plaintiff and Class members actual monetary damages in the form of the purchase price of the Smart TVs and damages as a result of the unauthorized to, and dissemination of, their personal information.

142.    Plaintiff and Class members seek damages, including punitive damages, reasonable attorneys' fees, and costs as a result of Defendants' fraudulent omissions.

### NINTH CLAIM FOR RELIEF
### Negligent Omission
**(On Behalf of Plaintiff and the National Class, or, in the alternative, the Pennsylvania Class)**

143.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

144.    Defendants negligently concealed, suppressed, or omitted a material fact.  To wit, Defendants concealed the existence of the Smart Interactivity tracking software that tracks and collects the users' information and viewing history as well as information from other devices that are connected to the user's Wi-Fi network.

145.    Defendants were under a duty to Plaintiff and Class members to disclose that the Smart TVs contained the pre-enabled tracking software due to the following reasons:

a.   Vizio, as the manufacturer, was in a superior position to know of the existence of the pre-enabled tracking software on Vizio Smart TVs;

b.   Both the Video Protection Privacy Act and the Electronic Communications Privacy Act prohibit the collection, interception, disclosure, and/or transmission of the information at issue without the prior, informed consent of Plaintiff and the Class members or the opportunity, given in a clear and conspicuous manner, to prohibit the disclosure;

c.   Plaintiff and Class members could not reasonably have been expected to learn or discover that Defendants included pre-enabled tracking software on the Smart TVs;

d.   Defendants should have known that Plaintiff and Class members could not reasonably have been expected to learn or discover that Defendants included pre-enabled tracking software on its TVs, and in fact, Defendants took steps to actively conceal the tracking software; and

**CLASS ACTION COMPLAINT; JURY DEMAND**

e.   Defendants should have known that the existence and nature of the pre-enabled software was a material fact that influenced the purchasing decision of Plaintiff and Class members.

146.   Defendants negligently concealed and/or suppressed information about the tracking software.   Defendants should have known that Plaintiff and Class members would not have purchased the Smart TVs for the price they paid if Defendants had disclosed the existence of pre-enabled tracking software.

147.   Defendants recognized the materiality of the tracking software in Vizio's Prospectus, as set forth above, by admitting that if the public knew the truth, it would significantly impact sales of its Smart TVs and its ability to profit from the sale of users' personally identifiable information to third parties.

148.   Plaintiff and Class members were unaware of the existence of the tracking software on Vizio's Smart TVs at the time of the purchases.   Had they known, Plaintiff and Class members would not have purchased Vizio Smart TVs or would have paid less for them.

149.   Defendants' conduct directly and proximately caused Plaintiff and Class members actual monetary damages in the form of the purchase price of the Smart TVs and damages as a result of the unauthorized access.

150.   On behalf of herself and the Class, Plaintiff seeks damages, including expenses, attorneys' fees, and costs, as a result of Defendants' negligence.

## IX.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff Caroline Tongarm, on behalf of herself and of all others similarly situated, prays for relief pursuant to each cause of each cause of action set forth above, and respectfully requests this Court enter an order for the following:

1.   Certifying that this action may be maintained as a class action, and appointing Plaintiff and her attorneys to represent the Pennsylvania Class and National Class;

2.   Enjoining Defendants from continuing the practices described herein;

1    3.    Awarding damages, restitution, disgorgement, and any other applicable including

2    relief as may be provided at law and in equity;

3    4.    Awarding Plaintiff and Class pre- and post-judgment interest to the extent permitted

4    by law, expenses, attorneys' fees, and costs; and

5    5.    Any other and further relief as the Court deems necessary, just, or proper.

6    Dated:  February 18, 2016

7                              */s/ Joseph W. Cotchett*
                               Joseph W. Cotchett
8                              Adam J. Zapala
                               Elizabeth Tran
9                              Joyce Chang
                               **COTCHETT, PITRE & McCARTHY, LLP**
10                             840 Malcolm Road, Suite 200
                               Burlingame, CA 94010
11                             Telephone: 650-697-6000
                               Facsimile: 650-697-0577
12                             jcotchett@cpmlegal.com
                               azapala@cpmlegal.com
13                             etran@cpmlegal.com
                               jchang@cpmlegal.com

14
                               Gary F. Lynch
15                             **CARLSON LYNCH SWEET & KILPELA, LLP**
16                             1133 Penn Avenue, 5th Floor
                               Pittsburgh, Pennsylvania 15222
17                             P. (412) 322-9243
                               F. (412) 231-0246
18                             glynch@carlsonlynch.com

19
                               Joseph P. Guglielmo
20                             **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
                               The Chrysler Building
21                             405 Lexington Avenue, 40th Floor
                               New York, NY 10174-4099
22                             P. 212.223.6444
                               F. 212.223.6334
23                             jguglielmo@scott-scott.com

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Arthur M. Murray
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130
T. 504.525.8100
F. 504.584.5249
amurray@murray-lawfirm.com

Andrew N. Friedman
Sally M. Handmaker (CA Bar # 281186)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005
T. 202.408.4600
F. 202.408.4699
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**CLASS ACTION COMPLAINT; JURY DEMAND**

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial of all issues so triable.

Dated: February 18, 2016

*/s/ Joseph W. Cotchett*
Joseph W. Cotchett
Adam J. Zapala
Elizabeth Tran
Joyce Chang
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com
jchang@cpmlegal.com

Gary F. Lynch
**CARLSON LYNCH SWEET & KILPELA, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
P. (412) 322-9243
F. (412) 231-0246
glynch@carlsonlynch.com

Joseph P. Guglielmo
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174-4099
P. 212.223.6444
F. 212.223.6334
jguglielmo@scott-scott.com

Arthur M. Murray
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130
T. 504.525.8100
F. 504.584.5249
amurray@murray-lawfirm.com

Andrew N. Friedman
Sally M. Handmaker (CA Bar # 281186)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, N.W.

**CLASS ACTION COMPLAINT; JURY DEMAND**

West Tower, Suite 500
Washington, DC 20005
T. 202.408.4600
F. 202.408.4699
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com